ERICKSON, Respondent, vs. McKAY and another, Appellants.

*March 7—April 5, 1932.*

For the appellants there were briefs by *Powell & Sprowls* of Superior, attorneys, and *Abbott, MacPherran, Dancer, Gilbert & Doan* of Duluth, Minnesota, of counsel, and oral argument by *Thomas W. Doan*.

For the respondent there was a brief by *Winsor & Wingate* and *Cadigan & Cadigan,* all of Superior, and oral argument by *William S. Wingate* and *Peter B. Cadigan*.

OWEN, J.   The plaintiff sustained physical injuries when he fell into an entrance way to the basement of the New Superior Hotel, in Superior, on the 25th day of November, 1931, to recover damages for which this action was brought.

It appears that the defendants are the lessees of the New Superior Hotel property under a ninety-nine-year lease.   A portion of the hotel building is leased for retail store purposes.   The Winkels Furniture Company, on that date, occupied one of these stores.   At that time the plaintiff was a salesman, and his main business was selling men's suits and clothing for a tailoring concern outside the city.   At about 7:15 of the evening in question he repaired to the store of the Winkels Furniture Company, where he thought he would find one George Hammer, whom he desired to interest in the purchase of a suit of clothes.   The front door of the store was locked, but there was a light in the store.   He made his presence known at the front door.   George Winkels, who was in the store, came to the door in response to his summons and told him that he did not have a key with which to unlock the front door, but that if he desired to come in and wait for Hammer he could go around to the back door.   He asked Winkels which direction to go, and Winkels told him he could go in either direction.   He accordingly proceeded to the rear of the Winkels furniture store.   He went south on Tower avenue until he reached the south line of the hotel building.   He then proceeded east until he came to an open area-way, when he proceeded north in search of the rear entrance of the Winkels furniture store.

The plaintiff testified that it was so dark he·could hardly see at all. It was extremely dark. Looking ahead, he could not see anything. He almost had to feel his way. "I would say it was probably as dark as it could be." While proceeding north along the east wall of·the building in this manner, he fell into the open space formed by a ramp leading down into the basement of the hotel building. He had never been in this area-way back of the hotel building before, and he knew nothing whatever of any situation that he might encounter in his pilgrimage to the rear door of the Winkels furniture store.

The negligence of the defendants is based on the alleged violation of the so-called safe-place statute (sec. 101.06), which requires every owner of·a public building (to which class the hotel undoubtedly belongs) to so construct, repair, or maintain the same as to render it safe. The contention of the plaintiff is that the presence of this unguarded hole rendered the same unsafe to those using the area-way back of the building.

The jury found that the hole into which plaintiff fell constituted a violation of the safe-place statute on the part of the defendants, and that the plaintiff was free from contributory negligence, upon which verdict judgment was rendered in favor of the plaintiff.

The defendants contend that the judgment should be reversed upon two grounds: (a) that the hole did not constitute a violation of the safe-place statute; and (b) that the plaintiff was guilty of contributory negligence as a matter of law.

As we have concluded that the judgment must be reversed because of the contributory negligence of the plaintiff, we find it unnecessary to consider whether the defendants were guilty of a violation of the safe-place statute.

Our conclusion that the plaintiff was guilty of contributory negligence as a matter of law is based upon the following considerations: In proceeding to the rear of the store of the

Winkels Furniture Company the plaintiff was traversing a locus that was utterly strange. He had no knowledge of any impediments to his passage that might be encountered. He knew nothing of the use to which this area-way back of the building was devoted. It was so dark that he could not see any obstruction that might be encountered. Darkness is in itself a warning of danger to one proceeding along a strange and unknown course. Under such circumstances the average individual instinctively proceeds with care and caution. Notwithstanding this situation, the plaintiff testifies that he proceeded on this strange course at an ordinary pace. It is not apparent from his testimony that he gave the least consideration to his own safety.

As is said in *Central Publishing House v. Flury,* 25 Ohio App. 214, 157 N. E. 794:

"Darkness is nature's own warning to arouse the natural instinct of self-protection, the first law of nature. Indifference to such an instinct is a clear violation of the fundamental physical law, and should be, under circumstances like those of the instant case, more impressive and convincing than a sign 'Danger' nailed on the door. Darkness was a danger in the instant case that stood gaunt and menacing in front of the eyes of the plaintiff, and under such circumstances as appear in this record, to enter the shaft is, in our judgment, such contributory negligence as should prevent a recovery in law."

This principle was applied by this court in *Du Rocher v. Teutonia Motor Car Co.* 188 Wis. 208, 205 N. W. 921, where it was held that one who rushed into a strange and unlighted garage and fell down a flight of stairs was guilty of contributory negligence as a matter of law. A number of cases are cited in the opinion of that case supporting the principle that one who proceeds in the dark in a strange place, with which he has no familiarity, is guilty of contributory negligence as a matter of law. In addition to the

cases cited in that opinion we are referred to *Medcraft v. Merchants Exchange,* 211 Cal. 404, 295 Pac. 822; *Bridger v. Gresham,* 111 Ga. 814, 35 S. E. 677; *Benton v. Watson,* 231 Mass. 582, 121 N. E. 399; *Gaffney v. Brown,* 150 Mass. 479, 23 N. E. 233; *Adams v. Olsen,* 107 N. J. L. 288, 151 Atl. 596; *Hudson v. Church of Holy Trinity,* 250 N. Y. 513, 166 N. E. 306; *Hilsenbeck v. Guhring,* 131 N. Y. 674, 30 N. E. 580; *Rice v. Goodspeed R. E. Co.* 254 Mich. 49, 235 N. W. 814; *Mineral City v. Gilbow,* 81 Ohio St. 263, 90 N. E. 800. These cases indicate a great unanimity of judicial authority upon this question. The principle is supported by considerations that seem compelling. It is applied and confined to situations which are strange to the actor and where he has no knowledge concerning physical impediments to his progress. It may also be modified by the exigencies of the actor's mission, as where he is in pursuit of a thief, as in *Ennis v. M. A. Hanna Dock Co.* 148 Wis. 655, 134 N. W. 1051.

Many places are perfectly safe in the daytime when one may observe where one is going, but which become a menace to personal safety in the nighttime. This is true of many factories or other places of employment. Sight is one of the faculties with which humanity is endowed and is to be exercised for one's personal safety and protection. Darkness robs one of this faculty and presents a situation where one cannot proceed with the same degree of safety for one's personal welfare. What constitutes ordinary care in the daytime cannot measure that degree of care required and which the great mass of mankind ordinarily exercises in the nighttime. It should be emphasized that this principle is not applicable to a situation with which the actor is entirely familiar and where he encounters an unusual and unexpected obstruction to his passage, as in *Edwards v. Alhambra Theatre Co.* 198 Wis. 228, 224 N. W. 104. For

502

these reasons it must be held that the contributory negligence of the plaintiff defeats his right of recovery, whether or not the defendants were guilty of a violation of the safe-place statute.

*By the Court.*—Judgment reversed, and cause remanded with instructions to dismiss the complaint.